UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABEL M. RODRIGUEZ,

                Plaintiff,                Case No. 1:20-cv-211

v.                                      Hon. Robert J. Jonker

ANDREW SAUL,

                Defendant.
_____/

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Abel M. Rodriguez (referred to as "plaintiff" or "Rodriguez") filed this lawsuit related to his employment at the Social Security Administration ("SSA").  Plaintiff's first lawsuit named the SSA as the defendant.  *See Rodriguez v. Social Security Administration*, 1:20-cv-52 (sometimes referred to as "*Rodriguez I*").  The Court dismissed *Rodriguez I* and entered judgment in favor of the defendant.  *See Rodriguez I* (Judgment, ECF No. 35).  In this, his second lawsuit, plaintiff sued the Commissioner of the SSA (sometimes referred to as "*Rodriguez II*").

In reviewing defendant's first motion to dismiss *Rodriguez II*, the Court found that,

> When read in conjunction with *Rodriguez I*, the specific claims addressed in this case involve workplace discrimination and retaliation related to national origin, age, and disability in violation of Title VII of the Civil Rights Act, the Age Discrimination in Employment Act ("ADEA"), and the Rehabilitation Act, which occurred between March 30, 2018, and October 13, 2018.

R&R (ECF No. 24, PageID.86).  After advising plaintiff of the deficiencies in his complaint and the pleading requirements set forth in Fed. R. Civ. P. 8(a), 8(d)(1), and 10(b), the undersigned recommended that

> To remedy this situation, plaintiff needs to file an amended complaint consistent with the Court's rules.  The amended complaint must set forth his claims

1

addressed in CHI-18-1014-SSA, *i.e.*, the alleged acts of discrimination and retaliation which occurred between March 30, 2018, and October 13, 2018, and the relevant statutes. Once plaintiff files an appropriate amended complaint, then defendant can respond, and the lawsuit can proceed.

*Id*. at PageID.90.  The Court adopted the R&R as its opinion, granted defendant's motion to dismiss the complaint in *Rodriguez II*, and allowed plaintiff to file an amended complaint to correct the deficiencies in the original complaint.  *See* Order (ECF No. 26).

Plaintiff filed an amended complaint (ECF No. 27).  This matter is now before the Court on defendant's motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 28).   The motion is unopposed.[1]

## I.    Plaintiff's amended complaint

The only issues before the Court in this case are the alleged acts of discrimination and retaliation which occurred between March 30, 2018, and October 13, 2018.   Despite this limited period at issue, plaintiff commenced the amended complaint by alleging incidents of discrimination that occurred over 20 years ago, *i.e.*, "I Abel Rodriguez began to be discriminated by Social Security Administration on 7/16/2000 when I was first hired."  Amend. Compl. (ECF No. 27, PageID.105). As defendant accurately points out,

The bulk of Mr. Rodriguez's amended allegations still predate March 30, 2018; he alleges a reasonable accommodation denial that occurred in 2016, promotions he did not receive from 2006 to 2016, and alleged harassment in connection with an October 2017 meeting. (Amd. Compl. at 3-4, PageID.107-108; *id*. at 4-5, PageID.108-109; *id*. at 7-8, PageID.111-112.)

Defendant's Brief (ECF No. 29, PageID.163).

---

[1] Plaintiff did not file a response to the motion as required by W.D. Mich. LCivR 7.2(c), which provides that, "Unless otherwise ordered, any party opposing a dispositive motion *shall*, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials." (emphasis added).

Plaintiff's only allegations with regard to the relevant time frame of March 30, 2018 through October 13, 2018, involve two letters.   Plaintiff addresses the letters as follows (in his words):

> I Abel Rodriguez was discriminated by the supervisor Mrs. McDonald as she sent me 2 threatening letters which are enclosed in spite of me being under FMLA.  See FMLA document 4 pages it clearly states return to work 09/01/18 and yet she issued a threatening letter also enclosed (2 pages) telling me in the letter if I don't return to work she would start process to have me terminated which was the 3 managers goal.  This is against FMLA law and against the law because this is discrimination.  There was an employee who was out for an extended period of time in Holland and he never received any letter from SSA to return to work and he also was under FMLA.  Why me?  Because I am Hispanic and singled out and discriminated.  Enclosed you will find the 2nd threatening letter I received in July 2018 again from Mrs. McDonald proposing to remove me from Federal Employment.  Again I state that this is against the law as I was under FMLA.

Amend. Compl. at PageID.112-113.   For his relief, plaintiff asks for $900,000.00 in damages and that the SSA "discipline and or/ [sic] dismiss the 5 white females who caused me so much pain, and suffering."  *Id*. at PageID.120.

The two letters at issue were signed by Operations Supervisor, Carin McDonald. Because the letters are the basis of plaintiff's lawsuit, the Court will address each letter in detail.

The first letter, dated March 29, 2018, addressed plaintiff's "frequent absences from work."  *See* Letter (March 29, 2018) (ECF No. 27-1, PageID.141-142).  Ms. McDonald observed that, "[d]ue to reasons beyond your control, you have been absent a significant amount of time over the past year," and that "[y]our inability to work a regular work schedule due to medical reasons has been a serious concern for quite some time as you continue to be absent."  *Id*.

Ms. McDonald noted that agency records show that plaintiff was in Leave without Pay (LWOP) under the Family and Medical Leave Act (FMLA) from December 26, 2017, through February 6, 2018, when he exhausted the 480 hours of FMLA coverage.  *Id*.  After the expiration of his FMLA coverage on February 6, 2018, plaintiff had been on LWOP through the date of the

letter (March 29, 2018).  *Id*. Ms. McDonald stated that "LWOP was granted to you in the hope that

you would eventually be able to return to work and perform the duties of your position on a regular

basis."  *Id*.  Ms. McDonald noted that plaintiff submitted a physician's notice on March 1, 2018,

which indicated that his absence would extend through September 1, 2018.  *Id*.

Ms. McDonald stated that "[w]e sympathize with your situation," but that she must

assess the impact plaintiff's absences have on the mission of the agency, noting that the "SSA is

limited in the number of individuals it may hire and retain" and that when an employee is unable

to work on a regular basis, his or her position still counts against the agency's allocations."  *Id*.

"Given our heavy workloads and the important services, we provide to our customers, most of

whom are disabled; we can no longer tolerate the detrimental effects of your excessive absences."

*Id*.

> **Therefore, it is my responsibility to warn you that a removal action to separate you from the Federal service may be initiated unless you begin to report for duty on a regular basis effective Friday, April 13, 2018.  This office can no longer tolerate your [excessive absences] regardless of whether management approves or disapproves those absences.**

*Id*. (emphasis in original).

Ms. McDonald went on to explain that,

> Please be assured that I am not insisting that you report for duty when you are medically unable to do so.  You have been a valuable asset to this Agency. However, your absences have placed a significant burden on this office and your fellow employees.  An employee who is available for duty on a regular basis must fill your position.  During your absences, work usually performed by you, including interviewing the high volume of visitors that come in, call and file online for service, must be assigned to other employees in addition to their regularly assigned work.  Due to ongoing workload demands and our responsibility for providing quality, timely services to the American public, the Agency can no longer absorb the loss of productivity and expertise resulting from your absences.  Therefore, if your excessive absences continue, we will initiate action to remove you even if management approves leave, including Leave without Pay, for your absences. Unless you begin reporting for duty on a regular, reliable basis effective Friday, April 13, 2018, you may receive a letter proposing your removal from the Federal

service.

*Id*. at PageID.141-142.  The allegations and attachments to the amended complaint indicate that plaintiff did not report for duty on April 13, 2018, but was not removed from the Federal service at that time.

Ms. McDonald sent a second letter, dated July 9, 2018, which again addressed plaintiff's "frequent absences from work" and the matters set forth in the March 29, 2018 letter. *See* Letter (July 9, 2018) (ECF No. 27-1).[2]  In this letter, Ms. McDonald advised plaintiff that,

> **"[I]t is my responsibility to warn you that a removal action to separate you from the Federal service may be initiated unless you begin to report for duty on a regular basis effective July 23, 2018.  This office can no longer tolerate your excessive absences, regardless of whether management approves or disapproves those absences.**

*Id*. at PageID.144 (emphasis in original).  In reaching this determination, Ms. McDonald stated that

> Agency records show that you were in Leave without Pay (LWOP) from March 16, 2018, through the present time totaling 655.5 hours.  LWOP was granted to you in the hope that you would eventually be able to return to work and perform the duties of your position on a regular basis.  The most recent physician's notice that you submitted on March 1, 2018, indicated that your absence would now extend through September 1, 2018.

*Id*. at PageID.143 (footnote omitted).  Ms. McDonald noted that "[t]hese numbers do not include the 480 hours of leave that was approved under the Family and Medical Leave Act (FMLA) between December 4, 2017, and March 16, 2018."  *Id*. (footnote 1).  It appears that the error corrected in this letter involved the calculation in FMLA time, *i.e.*, the March 2018 letter stated that plaintiff exhausted 480 hours of FMLA coverage on February 6, 2018, while the July 2018 letter stated that plaintiff exhausted the 480 hours of FMLA coverage on March 16, 2018.

---

[2] The July 9, 2018 letter corrected a mistake in the March 29, 2018 letter regarding FMLA leave.  *See* discussion, *infra*.

Ms. McDonald again advised plaintiff that while he has been a valuable asset to the agency, "your absences have placed a significant burden on this office and your fellow employees." *Id*. at PageID.143-144.  Ms. McDonald further advised plaintiff that "[u]nless you begin reporting for duty on a regular, reliable basis effective Monday, July 23, 2018, you may receive a letter proposing your removal from the Federal service." *Id*. at PageID.144.

Defendant points out that plaintiff's amended complaint does not allege that he was removed from Federal service.  Plaintiff's original complaint included a copy of the Dismissal of Appeal issued by the U.S. Equal Employment Opportunity Commission (EEOC) (dated February 12, 2020), in which the Commission found in pertinent part:

> Complainant [Mr. Rodriguez] filed an appeal with the Equal Employment Opportunity Commission (EEOC or Commission) from the May 30, 2019 final Agency decision finding no discrimination with regard to his complaint of unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. §2000e et seq.,  Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq., and the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 et seq.  . . .

> Complainant stated that management sent him two letters, one dated March 29, 2018, and one dated July 9, 2018, after Complainant exhausted his Family and Medical Leave Act (FMLA) leave, requesting that he return to work or the Agency would begin the process of removing him from his position.  However, management did not remove Complainant from his position after the first letter.  In fact, even after the second letter, which management stated it issued in order to correct a mistake in calculating the end of Complainant's FMLA leave, management never removed complainant from his position.

> Management indicated that Complainant's unit was impacted by his absence due to him being one of six individuals in the unit, and therefore, he was issued the return request.  Management also stated that it sent the paper forms for leave after discovering that Complainant was unable to make his leave requests electronically.  Complainant stated that management sent several leave forms with the July 9, 2018 letter.  Complainant also stated that management made statements to the Office of Personnel Management (OPM) that he stated were defamatory and caused the delay of his disability retirement.  Complainant stated that these three incidents - the two letters and management's response to OPM – were based on his protected bases of national origin (Hispanic), sex (male), disability, age (over 40

years old), and reprisal for prior protected EEO activity.

EEOC Dismissal (ECF No. 1-1, Page ID.12-13).

## II.    The Court's instructions and Defendant's motion to dismiss

### A.    Background

As an initial matter, the Court will review plaintiff's amended complaint to determine whether it meets the pleading requirements as directed by the Court.  Next, the Court will address defendant's motion to dismiss the amended complaint because: (1) the amended complaint fails to allege that plaintiff exhausted any administrative remedies; and (2) the amended complaint fails to allege actionable employment discrimination that occurred during the relevant time period between March 30, 2018, and October 13, 2018.  Defendant's Brief at PageID.165.

### B.    Compliance with court rules

The Court granted leave for plaintiff "to file an Amended Complaint complying with the Court rules."  Order (ECF No. 26, PageID.104).  The Court pointed out that plaintiff's original complaint was difficult to decipher because it did not comply with the Federal Rules of Civil Procedure:

> Defendant has demonstrated that plaintiff's complaint is deficient because it does not allege facts which would support the discrimination claims raised before the EEOC, *i.e.*, "[h]e does not allege that SSA took any action because of, for example, his age, national origin, or disability." Defendants' Brief (ECF No. 17, PageID.52). In this regard, plaintiff has filed a rambling complaint which fails to comply with the basic rules of pleading under Fed. R. Civ. P. 8(a) which states as follows:
>
> > **(a) Claim for Relief.** A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

While no technical form is required, "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). In addition, "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Furthermore, while the EEOC decision references three federal statutes which could form the basis for federal claims, plaintiff cites no statutes in his complaint.

To remedy this situation, plaintiff needs to file an amended complaint consistent with the Court's rules. The amended complaint must set forth his claims addressed in CHI-18- 1014-SSA, *i.e.*, the alleged acts of discrimination and retaliation which occurred between March 30, 2018, and October 13, 2018, and the relevant statutes. Once plaintiff files an appropriate amended complaint, then defendant can respond, and the lawsuit can proceed.

R&R (ECF No. 24, PageID.89-90).

Plaintiff failed to comply with the pleading instructions set forth by the Court.  The amended complaint is another lengthy narrative which includes rhetoric and allegations against the judges assigned to this case.[3]  Plaintiff ignored the Court's direction to state his claims in numbered paragraphs containing simple, concise, and direct allegations.  Defendant cannot file an answer to this complaint in its present form. In addition, while plaintiff's amended complaint refers to discrimination based on race, sex, age, and retaliation, he does not allege facts to demonstrate that the two letters written on March 29, 2018 and July 9, 2018 violated any particular statute.  For these reasons, plaintiff's amended complaint could be rejected or stricken because he failed to comply with the Court's order.  However, as discussed in § II.C., plaintiff's amended complaint should be dismissed with prejudice for failing to state a claim upon which relief can be granted.

---

[3] In this regard, the plaintiff took offense because the undersigned insulted him by calling plaintiff a "cryptic." Amend. Compl. at PageID.119.  It is unclear what plaintiff means by this statement. In footnote 3 of the R&R (ECF No. 24, PageID.90), the undersigned referred to the denial of "plaintiff's cryptic 'letter/motion'" seeking to amend the complaint.  Plaintiff also found fault with Chief Judge Robert J. Jonker, requesting a different judge because "Judge Jonker used erroneous information supplied by SSA to Judge Kent." Amend. Compl. at PageID.119.

### C.    Defendant's motion to dismiss

Defendant has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.   As discussed, *supra*, the motion is unopposed.   A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests.  *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true.  *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).   While *pro se* pleadings are to be liberally construed, *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), "this court is not required to conjure up unpled allegations."  *Dietz v. Sanders*, 100 Fed. Appx. 334, 338 (6th Cir. 2004). Thus, "an unadorned, the - defendant - unlawfully - harmed - me accusation" is insufficient to state a claim for relief.  *See Iqbal*, 556 U.S. at 678.  Finally, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

1.      **Exhaustion**

Plaintiff's amended complaint does not allege exhaustion of administrative remedies.  However, defendant acknowledges that the *original* complaint and its attachments established that plaintiff administratively exhausted an employment discrimination claim arising from the two letters.  *See* Defendants Brief at PageID.167; Compl. (ECF No. 1, PageID.13). In this regard, defendant states that "[t]he two letters Mr. Rodriguez now complains of were included in the administrative process, and accordingly, Mr. Rodriguez's original complaint (although not his amended complaint) establishes that his claim arising from the letters was exhausted at the time he filed this action. (See Compl. at PageID.13.)".  Defendant's Brief at PageID.167.  Assuming that plaintiff could amend his complaint to allege exhaustion, the Court will proceed to determine whether plaintiff has stated a claim for relief.

2.      **Failure to state a claim upon which relief can be granted**

Defendants contend that plaintiff has failed to state a claim for employment discrimination based upon the two letters.  Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. prohibits "employer discrimination on the basis of race, color, religion, sex, or national origin, in hiring, firing, salary structure, promotion and the like."  *University of Texas Southwestern Medical Center v. Nassar*, -- U.S. -- , 133 S. Ct. 2517, 2523 (2013) (citing 42 U.S.C. § 2000e-2(a)).  In order to plead facts sufficient to state a claim of race discrimination that is plausible on its face, "the complaint must do more than infer only a 'mere possibility of misconduct,' it must 'show' that the complainant is entitled to relief."  *Sam Han v. University of Dayton*, 541 Fed. Appx. 622, 627 (6th Cir. 2013) (holding that while the plaintiff's employment may have been terminated against his wishes, "his complaint does not plausibly show that the termination of his employment, or any other adverse employment decision to which he may have been subjected, was a result of

discrimination based upon his race or his gender."). "A complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Russell v. Tennessee Department of Correction*, 99 Fed. Appx 575, 577 (6th Cir. 2004) (internal quotation marks omitted). "[C]onclusory, unsupported statements" of wrongful conduct are insufficient to state a claim. *Dellis v. Corrections Corp. of America*, 257 F.3d 508, 511 (6th Cir. 2001). *See Morgan*, 829 F.2d at 12 ("we need not accept as true legal conclusions or unwarranted factual inferences").

As discussed, the two letters addressed plaintiff's excessive absences, the need for the agency to have a full staff of employees, and stated that the agency may initiate an action to separate plaintiff from the Federal service unless he reported for duty on a regular basis. Plaintiff makes the conclusory allegation that letters discriminated against him because he was Hispanic. Amend. Compl. at PageID.112-113. In support of his claim, plaintiff alleged that another employee was treated differently,

> There was an employee who was out for an extended period of time in Holland and he never received any letter from the SSA to return to work and he too was under the FMLA. Why me? Because I am Hispanic and singled out and discriminated.

Amend. Compl. at PageID.113. Plaintiff's conclusory allegations do not establish that a similarly-qualified employee, who was not a member of a protected class, was treated differently from him. *See, e.g.*, *Russell*, 99 Fed. Appx. at 577 (dismissing race discrimination action where the "complaint contained neither details surrounding the alleged denial of a promotion nor any facts supporting such claim" and the plaintiff "did not allege that he applied for a promotion, was qualified for a promotion, was considered for a promotion, or that a similarly-qualified employee who was not a member of the protected class received a promotion."). Based on these allegations

11

the Court cannot reasonably infer that SSA's letters written in 2018 discriminated against plaintiff because he was Hispanic.

In addition, plaintiff's claim fails because he did not allege that the two letters resulted in an adverse employment action. In order to present a Title VII claim, a plaintiff must demonstrate that he has suffered an adverse employment action. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008). "An adverse employment action is an action by the employer that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefit.'" *Id.* (quoting *Burlington Industries v. Ellerth*, 524 U.S. 742, 761 (1998)). Here, plaintiff alleged that the two letters threatened him with termination based on his race. While the letters advised plaintiff that "a removal action to separate you from the Federal service may be initiated unless you begin to report for duty on a regular basis," no such separation occurred. As demonstrated by the exhibits attached to plaintiff's complaint, the EEOC found that "management never removed Complainant from his position." Dismissal at PageID.13. In short, plaintiff cannot state a claim for relief based on race discrimination because he did not suffer the threatened adverse employment action of separation from Federal service.[4]

### D. Summary

Plaintiff's amended complaint failed to comply with the Federal Rules of Civil Procedure as set forth in the Court's order. In addition, the amended complaint failed to allege

---

[4] The Court notes that all of the legal theories submitted by plaintiff to the EEOC (Title VII, the Rehabilitation Act, and the ADEA) require that he establish an adverse employment action. *See Cyrs v. Secretary, Department of Veterans Affairs*, No. 08-12929, 2009 WL 2168314 at *5 (E.D. Mich. July 16, 2009) (pointing out that the plaintiff's discrimination and retaliation claims brought under Title VII, the Rehabilitation Act, and the ADEA all require proof of an adverse employment action, citing *Thompson v. N. Am. Stainless, LP*, 567 F.3d 804, 808-09 (6th Cir. 2009) (Title VII retaliation); *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) (Title VII discrimination); *Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007) (Rehabilitation Act); and *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004) (ADEA)).

actionable employment discrimination that occurred during the relevant time period of March 30, 2018, through October 13, 2018.  For these reasons, plaintiff's amended complaint should be dismissed with prejudice.

## III.    RECOMMENDATION

Accordingly, I respectfully recommend that defendant's motion to dismiss (ECF No. 28) be **GRANTED** and that plaintiff's amended complaint be **DISMISSED with prejudice**.


Dated:  February 2, 2022                           /s/ Ray Kent
                                                   United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).